## Klock Cigarette Vending Service Co., Inc. v. Rodriquez

Before Palmer, P. J., Williams, Jr., Grifo and Franciosa, JJ.

*Gerald Roth,* for plaintiff.
*Bernard V. O'Hara, Jr.,* for defendant.

PER CURIAM, July 17, 1972.—This matter is before the court on plaintiff's motion to take off a nonsuit.

The history of the case is as follows:

On July 31, 1969, the parties entered into a written "location lease" under the terms of which defendant-lessor, a restaurant owner, leased to plaintiff-lessee, a coin machine distributor, "sufficient space to permit the installation of a cigarette vending machine" on defendant's business premises for a term of five years and for a recited consideration of five cents per pack commission on each pack of cigarettes vended through plaintiff's machine. The commission was paid quarterly. The lease also gives plaintiff the exclusive rights to cigarette sales on defendant's premises and provides that plaintiff's machine be placed prominently, and that plaintiff shall have the sole right to determine the price at which cigarettes are to be vended. The price per pack was established by plaintiff at 50 cents. Plaintiff undertook to keep its machine adequately stocked.

It appears that the parties enjoyed a satisfactory relationship from July 31, 1969, until some time after

June 3, 1970. By a letter of the latter date, plaintiff informed defendant that a rise in the wholesale price of cigarettes necessitated defendant's either continuing to sell cigarettes at 50 cents per pack and accepting a 1 cent reduction in commission per pack, or raising the price to 55 cents and taking an increase in commissions. Plaintiff's letter further advised against an increase in price as it was likely to antagonize defendant's patrons.

After receipt of plaintiff's letter of June 3, 1970, defendant made known to plaintiff, through plaintiff's service representative, his unwillingness to accept any reduction in the agreed commission of five cents per pack. It appears, however, that plaintiff unilaterally reduced the commission to four cents and failed to exercise its right to raise the price per pack of cigarettes.

At this point, defendant moved plaintiff's machine from the barroom of the premises to the dining room. Although the volume of business in the dining room was less than in the barroom, defendant was within his rights under the lease in effecting the move. The lease does not designate a specific area where plaintiff's machine must be located. The only provision regarding location is that the machine be "placed prominently."

It appears that the machine remained in operation in the dining room for about one month, from the end of July 1970 until September 1, 1970, at which time defendant purchased a machine of his own. During that period, plaintiff failed to service and stock its machine. These facts were established by defendant's testimony as of cross-examination. Since defendant's testimony in this respect was not contradicted, plaintiff is concluded by it: Conley v. Mervis, 324 Pa. 577, 188 Atl. 350 (1936); Becker v. Saylor,

317 Pa. 573, 177 Atl. 804 (1935). Furthermore, plaintiff's witness, Jack James Sperling, an employe of plaintiff who was assigned to service the machine, testified that service was discontinued as of the date that the machine was moved to the dining room. Mr. Sperling also testified that he was not sure of the date on which defendant's machine appeared on the premises.

On September 1, 1970, defendant discontinued operation of plaintiff's machine and installed a cigarette vending machine of his own in the barroom. Plaintiff removed its machine in November 1970. Thereafter, plaintiff instituted suit, alleging that defendant refused to continue using plaintiff's machine and installed a vending machine of his own in violation of the lease agreement, and that plaintiff thereby suffered damages in the amount of $2,105.60. Defendant filed an answer and counterclaim, specifically denying any breach on his part, alleging a breach of the agreement by plaintiff in reducing the commission due defendant, and claiming $86 in unpaid commissions for the last quarter during which plaintiff's machine was in operation on defendant's premises. In its answer to the counterclaim, plaintiff credited defendant with $86 as a setoff against moneys allegedly owing and adjusted its prayer for relief in the amount of the credit.

At the trial of the case, after plaintiff had rested, the learned trial judge granted defendant's motion for a compulsory nonsuit. The learned trial judge set forth his reasons for granting the motion as follows:

"THE COURT:—but I am convinced that this is a lease for land. I am convinced that the Statute of Frauds applies and I am convinced that the state of proof on plaintiff's side has not established a modification. Now, I am fully cognizant of your theory

that this is not the issue. That the issue is a breach and on whose side the breach was, but I pass that by and am more convinced that the testimony of the plaintiff, the letter, the exhibits, all of these are an attempt to modify an existing lease and that that attempt to modify it does not meet the requirements of the Statute of Frauds; and, therefore, I grant the motion and I invite motions for new trial because I would like this Court en banc to consider this question. That is my decision."

Plaintiff has now moved to take off the nonsuit. In support of the motion, plaintiff argues that inasmuch as its letter of June 3, 1970, was merely an unaccepted offer to modify an existing contract, the original contract remained in effect and was materially breached by defendant's ceasing to use plaintiff's vending machine and installing one of his own; that, therefore, no statute of frauds problem exists, since there was no effective modification of the original contract; therefore, the learned trial judge erred in his application of the law and interpretation of the evidence. We disagree.

As we interpret the facts of this case, it would have been incumbent on plaintiff to establish a valid modification of the lease agreement, reducing defendant's commission from five to four cents per pack, in order to prove that defendant breached the agreement. The record is absolutely void of any such showing, and, indeed, plaintiff now contends that no attempt to prove a modification was ever made; and, further, that such a showing is not necessary to its cause of action. However, in the absence of that proof, it would have further been plaintiff's burden to excuse its failure to service and supply its machine during the month of August 1970. The record, however, is also void of any convincing evidence in this

regard. In short, the record contains ample evidence that it was plaintiff, not defendant, who materially breached the lease agreement: first, in unilaterally reducing defendant's rightful commission and second, in failing to service and adequately supply its machine.

Any material failure of performance by one party to a contract not justified by the conduct of the other discharges the latter's duty to give the agreed exchange: 8 P. L. Encyc., Contracts, §367, and cases cited therein.

Accordingly, the court enters the following

## ORDER OF THE COURT EN BANC

And now, to wit, July 17, 1972, plaintiff's motion to take off a nonsuit is hereby denied and dismissed.